# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVE K. CHAPMAN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED STATES AIR FORCE, and DR. HEATHER WILSON, as Secretary of the United States Air Force;<br><br>　　　　　　Defendants. | 8:18CV426<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 10, filed by Defendants United States Air Force (USAF) and Dr. Heather Wilson, Secretary of the USFA. For the reasons stated below, the Motion for Summary Judgment will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other material upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

The Court notes that Chapman has not specifically responded to Defendants' statement of facts and Chapman's own statement of facts does not contain pinpoint cites to the record.

Plaintiff Steve Chapman, an African American male, was employed with the USAF 557th Weather Wing, 2d Weather Group, 2d Systems Operations Squadron (2 SYOS) at Offutt Air Force Base (Offutt AFB) until he voluntarily departed his position at Offutt AFB in October 2017. At all relevant times, Colonel Steven Dickerson was the Wing Commander of the 557th Weather Wing and Colonel Donald Shannon was the Commander of the 2d Weather Group Command office. The 2d Weather Group is composed of six preliminary subordinate units, including the 2 SYOS.

In June 2014, Lieutenant Colonel Jason Blackerby became Commander of the 2 SYOS and Chapman's first-level supervisor. Blackerby was Commander of the 2 SYOS until June 29, 2016, when he left for another position in Washington, D.C. In June 2016, Lieutenant Colonel John McMillen became Commander of the 2 SYOS.

New employees at Offutt AFB were required to complete No FEAR Act training within 90 days of employment, either through in-house or computer-based training, and all employees were required to complete refresher training every two years. The training informed employees that they must contact an Equal Employment Opportunity (EEO) counselor within 45 days of an allegedly discriminatory act or personnel action. In 2015-2017, EEO posters were also posted in various places around Offutt AFB. The EEO poster in the 557th Weather Wing, 2d Weather Group Command office was displayed on an information board in an area where most employees entered the building. The EEO poster contained information on the civilian complaint process, including the requirement to consult with an EEO counselor within 45 days. The poster directed employees to the EEO webpage and Equal Opportunity (EO) office where they could find more information

on making a complaint. In 2016-2017, an EO office handout was also available to help employees understand the EEO process.

In 2016-2017, the EO office processed EEO complaints at Offutt AFB. The process began with an informal complaint. At the informal stage of the process, the employee could elect to attempt to resolve the matter through alternative dispute resolution or through the traditional EEO counseling processes. If the parties reached an agreement through mediation, a binding settlement agreement was signed by the parties. If the matter could not be resolved informally, the employee could file a formal complaint of discrimination but only as to the allegations first raised at the informal stage. The EO office did an initial review of the formal complaint and then, after receiving advice from the Air Force Legal Operations Agency, the relevant Wing Commander determined whether to accept or dismiss the formal complaint.

Chapman filed three EEO claims with the EO office. On December 1, 2015, Chapman contacted an EO counselor and filed an informal complaint (8F1C16001) alleging discrimination because of his race; retaliation; and a hostile work environment. Specifically, Chapman alleged Blackerby unfairly counseled Chapman for failure to treat others with dignity and respect, and for detraction from effective operations of the unit. Chapman also alleged that Blackerby and Robert Williams, the Director of Operations, created a hostile work environment by perpetrating these accusations. On March 30, 2016, during the informal stage, a settlement agreement was reached and signed by all parties. Chapman never contacted the EO office to allege any breach of this agreement.

On July 19, 2017, Chapman filed a second informal complaint (8F1C17003) alleging the security guards at the Offutt AFB entrance discriminated against him because

3

of his race and color. The alleged harassment continued through August 2017. Chapman Aff., ECF No. 20, Page ID 125. Following an investigation, Chapman did not file a formal complaint of discrimination and the claim was closed on December 23, 2017.

In 2017, Dickerson initiated a Commander Directed Investigation (CDI) into allegations[2] that Chapman misused government property and time for personal use by using his government computer during work hours to write a book and abused his authority as a supervisor by holding a meeting regarding his book. Pl. Br., ECF No. 19, Page ID 116-17. On September 21, 2017, Chapman was notified of the CDI and his computer was seized. He was not issued another computer until September 24, 2017. On October 3, 2017, Chapman was interviewed as part of the investigation.

When Chapman voluntarily departed his position at Offutt AFB in October 2017, he and McMillen agreed that his last day would be October 28, 2017. Chapman Aff., ECF No. 20, Page ID 126. Yet Chapman was informed that he was banned from entering the 557th Weather Wing building on October 13, 2017, making it impossible for him to out-process, return items belonging to the USAF, retrieve his personal items, or say farewell to his co-workers. *Id.* at 168. Chapman arranged to meet EO office employees to turn over the items belonging to the USAF. *Id.*

On November 21, 2017, Chapman received a letter stating that the allegations forming the basis of the CDI were "not substantiated."

On January 5, 2018, Chapman's attorney contacted the EO office to request an investigation into an alleged pattern of harassment and discrimination. Bianco Aff., ECF

---

[2] The allegations came to Dickerson's attention after an anonymous letter was sent to the former U.S. Secretary of Defense. Chapman Aff., ECF No. 20, Page ID 126.

4

No. 21, Page ID 171. Chapman's attorney sent a follow-up letter on January 9, 2018, ECF No. 20, Page ID 162. On February 7, 2018, the EO office received an informal complaint (8F1C18001) from Chapman's attorney, ECF No. 11-1, Page ID 66-77. The informal complaint referenced a performance rating given to Chapman by Blackerby in May 2016. The EO office asked Chapman's attorney to clarify the allegations in the complaint.

On February 15, 2018, Chapman's attorney replied that "from 2015 to Mr. Chapman's departure in late 2017, the office culture was not conducive with a healthy working environment and was in fact hostile to Mr. Chapman." Bianco Letter, ECF No. 11-1, Page ID 78. The correspondence stated that Blackerby made false allegations against Chapman that led to the EEO complaint in December 2015, and that Blackerby refused to grant Chapman's request for workplace accommodations. The letter also referenced the CDI that was conducted to determine whether Chapman had misused government property and time.

On April 26, 2018, the EO office sent a Notice of Final Interview and Right to File a Formal Complaint of Discrimination. On May 9, 2018, Chapman filed a formal EEO complaint with the EO office. On June 12, 2018, a Final Agency Decision was issued dismissing Chapman's formal complaint as untimely because he did not contact an EO counselor within 45 days of the alleged discriminatory events or actions. At no time did Chapman request an extension of the 45-day deadline.

Chapman filed a Complaint with this Court on September 10, 2018, and filed an Amended Complaint on December 12, 2018, ECF No. 5. Chapman's Amended Complaint alleges race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*, and failure to accommodate under

the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et. seq*. Defendants seek summary judgment on all four causes of action because Chapman failed to exhaust administrative remedies, specifically by failing to contact an EEO counselor within 45 days of the alleged discriminatory event or action. Chapman argues that contact was made within the 45-day period. The parties' dispute centers primarily on the appropriate dates for calculation of the 45-day period

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1043). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517

(8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

**DISCUSSION**

"A Title VII plaintiff must exhaust his or her administrative remedies before bringing discrimination claims." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 949 (8th Cir. 2011) (citing *Bailey v. U.S. Postal Serv.,* 208 F.3d 652, 654 (8th Cir.2000)). For a federal employee this includes the requirement that the employee "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory" or, in the case of personnel action, within 45 days of the effective date of the action. *Id.* (quoting *Bailey,* 208 F.3d at 654) (internal quotations omitted); *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003). This requirement also applies to claims filed under the Rehabilitation Act. 29 C.F.R. § 1614.103. "[F]iling a timely charge of discrimination . . . is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Ballard v. Rubin*, 284 F.3d 957, 964 n.6 (8th Cir. 2002) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)). "If the matter cannot be resolved informally with the help of the counselor, the employee may file a formal EEO complaint with the agency." *Burkett*, 327 F.3d at 660 (citing 29 C.F.R. § 1614.106).

I. **Initiation of Contact**

Defendants argue that Chapman did not initiate contact with the EO counselor until the written complaint was mailed to the EO office on February 7, 2018. Chapman argues that contact was initiated when his attorney notified the EO office of "Chapman's claims which are the subject matter of this action" during a telephone conversation with Randy White from the EO office on January 5, 2018. Bianco Aff., ECF 21, Page ID 171. "[T]he EEOC has issued a number of decisions that interpret 'initiate contact' to require that the employee contact an agency official logically connected to the EEO process and exhibit

an intent to begin the EEO process." *Nygren v. Ashcroft*, 109 F. App'x 816, 819 (8th Cir. 2004) (citations and internal quotations omitted). Construing the facts in a light most favorable to Chapman, the Court will assume without deciding that Chapman initiated the requisite contact on January 5, 2018. [3]

## II. Final Discriminatory Act

Chapman argues that his hostile work environment claim survives[4] because the last discriminatory act occurred on November 21, 2017, when Chapman received the results of the CDI clearing him of any wrongdoing. Pl. Br., ECF No. 19, Page ID 118-119. Defendants argue that the letter from Dickerson stating that the allegations against Chapman were unfounded was not a discriminatory act and that no discriminatory acts occurred within the 45-day period before January 5, 2018. The Court agrees.

The 45-day period for initiating contact with respect to discrete retaliatory or discriminatory acts begins to run on the date the event happened. *Wilkie*, 638 F.3d at 951 (citations omitted). A hostile work environment claim will be considered timely if any of the acts contributing to the claim occurred within the 45-day period. *See id.* (citing *Rowe v. Hussmann Corp.*, 381 F.3d 775, 779 (8th Cir. 2004). "This determination requires that [the Court] consider whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id.* (citing *Rowe*, 381 F.3d at 779).

---

[3] Although Chapman may have had prior contact with the EO office to report activity which formed the basis of his first two informal complaints, these claims were resolved by the EO office through settlement or dismissal without filing of a formal complaint. Chapman does not argue in his brief that any of these prior contacts constituted initiation of contact with respect to the claims contained in his Amended Complaint.

[4] Chapman argues against dismissal of his hostile work environment claim but does not specifically address his retaliation claim, Rehabilitation Act claim, or any other claim based on discrete acts.

With respect to his retaliation claim, Chapman alleges that in May 2016 he received a degraded performance review in retaliation for the informal EEO complaint he filed in 2015. Am. Compl., ECF No. 5, Page ID 34. Even assuming Chapman initiated contact regarding this retaliation on January 5, 2018, it still falls outside the 45-day reporting requirement.[5]

With respect to his Rehabilitation Act claim, Chapman alleges that on January 4, 2016, he requested to be excused from the weekly Configuration Control Board meeting due to his health condition and that Blackerby denied Chapman's request. Am. Compl., ECF No. 5, Page ID 34. Even assuming Chapman initiated contact regarding this retaliation on January 5, 2018, it still falls outside the 45-day reporting requirement.[6]

With respect to his race discrimination and hostile work environment claims, Chapman points to no discrete acts or acts contributing to the hostile work environment that occurred within 45-days before January 5, 2018. Although he argues that the letter he received from Dickerson on November 21, 2017, constituted an act contributing to the hostile work environment claim, the Court disagrees.

Dickerson's letter outlined the results of the CDI and informed Chapman that the allegations against him were determined to be "NOT SUBSTANTIATED." Pl. Br., ECF

---

[5] Title VII prohibits employers from retaliating against employees for opposing illegal discrimination. *See* 42 U.S.C.2000e–3(a). Retaliation claims by federal employees are subject to the same 45–day reporting timeline as other discrimination claims. *See Betz v. Chertoff,* 578 F.3d 929, 937–38 (8th Cir. 2009) (holding that retaliatory act that took place outside of 45–day window was time-barred).

[6] "[A]n employer's denial of a request for a reasonable accommodation . . . is a *discrete act* of discrimination that is an *independently actionable* unlawful employment practice under the [Rehabilitation Act]." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1059 (8th Cir. 2016) (citation omitted) (emphasis in original). The exhaustion of administrative remedies requirement also applies in failure to accommodate cases under the Rehabilitation Act. *See Ballard*, 284 F.3d at 964 n.6.

No. 19, Page ID 122-23. Chapman became aware of the investigation on September 21, 2017, when his computer was seized. He was interviewed as part of the investigation on October 3, 2017. Although the decision to conduct the investigation, the seizure of the computer, and Chapman's interview may have contributed to the alleged hostile work environment, the letter exonerating him from any wrongdoing was not discriminatory or harassing in nature and was not an act that contributed to that alleged hostile work environment. Further, Chapman was no longer employed at Offutt AFB after October 28, 2018, and it was impossible for the general conditions contributing to the alleged hostile work environment to have continued beyond that date. *See West v. Potter*, 540 F. Supp. 2d 91, 96 (D.D.C. 2008) ("[plaintiff] cannot logically claim that she endured a hostile work environment when she was not present"). Thus, Chapman failed to initiate timely contact with an EO counselor regarding his race discrimination and hostile work environment claims.

Chapman argues that it would have been improper for him to initiate contact with the EO office before he received the November 21, 2017, correspondence because any contact could have been perceived as an attempt to interfere with the investigation. Even if Chapman had a legitimate fear of being accused of attempting to interfere with an ongoing investigation, such a fear does not explain why he waited until January 5, 2018, to contact the EO.

No discrete acts and no acts contributing to the alleged hostile work environment occurred within 45 days before January 5, 2018. Thus, Chapman's claims based on alleged race discrimination, retaliation, hostile work environment, and failure to accommodate must be dismissed unless waiver, estoppel, or equitable tolling apply.

## III. Waiver, Estoppel, and Equitable Tolling

A federal agency does not waive an untimely request for EEO counseling merely by receiving and investigating a federal employee's complaint of discrimination. *Horton v. Potter,* 369 F.3d 906, 911 (6th Cir. 2004); *see also Dewey v. Chertoff*, 416 F. Supp. 2d 661, 672–73 (N.D. Iowa 2006). Here, the EO office did not agree to extend the 45-day deadline. Although it accepted Chapman's complaint, it did not issue a decision on the merits, but dismissed the complaint as untimely. Thus, the 45-day deadline was not waived.

"Equitable estoppel applies if a defendant actively prevents a plaintiff from suing on time; equitable tolling applies if the plaintiff, despite due diligence, cannot obtain vital information about the existence of her claim." *Jenkins v. Mabus*, 646 F.3d 1023, 1027–28 (8th Cir. 2011) (citing *Dring v. McDonnell Douglas Corp.,* 58 F.3d 1323, 1328–29 (8th Cir.1995); 29 C.F.R. § 1614.105(a)(2)). The USAF provided employees with information and continued training regarding the 45-day contact requirement. Chapman had lodged two prior informal claims with the EO office and does not argue that Defendants prevented him from timely presenting his claims to the EO office or that he was unaware of the existence of his claims. Thus, equitable estoppel and equitable tolling will not extend the 45-day deadline for Chapman's claims.

## CONCLUSION

Chapman's claims based on alleged racial discrimination (Count One), retaliation (Count Two), hostile work environment (Count Three), and failure to accommodate (Count Four) will be dismissed.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 10, filed by Defendants United States Air Force and Dr. Heather Wilson, as Secretary of the United States Air Force, is granted;

2. The above-captioned matter is dismissed with prejudice;

3. The parties will bear their own attorney fees and costs; and

4. A separate judgment will be entered.

Dated this 24th day of June 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge